SOUTH OMAHA NATIONAL BANK V. HARRY E. MCGILLIN ET AL.

FILED JUNE 20, 1906. No. 13,578.

1. Chattel Mortgages: VALIDITY. A chattel mortgage on a specified number of cattle, describing them by age and brands, and reciting that "the above described stock are in my undisputed possession, free from all liens and incumbrances, and kept on my premises on section No. 4, township No. 5, range No. 38, Chase county, Nebraska," is not void on its face for uncertainty of description.

2. ———: ———. If it is made to appear that such mortgage was in fact given on a specified number of cattle out of a larger number of the same kind and description, or, in other words, on a part only of a herd of cattle of the same kind and bearing the same description, it is void as to third persons, unless there has been a separation or a delivery of the cattle mortgaged to the mortgagee.

3. ———: SELECTION. While such a mortgage is void as to third persons, it is not void between the parties thereto. It gives to the mortgagee the right of selection, and, when he has exercised that right, the lien of the mortgage attaches and will prevail over all after acquired interests in the mortgaged property.

4. ———: PRIORITIES. When two such mortgages are executed on parts of the same herd of cattle, the mortgagees have an equal right of selection, and the one first exercising that right is entitled to the possession of the cattle so selected by him, to the exclusion of the rights of the other, if need be.

5. ———: Assignment: Priorities. If, however, the mortgagee in such mortgage transfers the same to a third party, and afterwards takes the second mortgage on the same description of property, he takes his right of selection subject to the right so transferred to the first assignee. And if he afterwards assigns the second mortgage, such assignee will take no greater right than his assignor had.

6. Instructions announcing a contrary rule disapproved.

Error to the district court for Chase county: Robert C. Orr, Judge. *Reversed.*

*Brome & Burnett* and *A. G. Ellick,* for plaintiff in error.

*McCoy & Olmstead, contra.*

Barnes, J.

One Harry McClelland was engaged in buying, selling and raising cattle on a ranch situated in Chase county, Nebraska. For the purpose of furthering his business he borrowed money from the Shelley-Rogers Commission Company of South Omaha, Nebraska, to whom he gave his four promissory notes, secured by chattel mortgages upon cattle which he described as in his possession and on his ranch. The first note was for $3,531.51, dated April 19, 1902, due November 7 following. The mortgage securing this note was on "eighty-one head of four year old steers, branded one or both of the following brands: — or H." The second note was for $3,099, dated September 5, 1902, due April 9, 1903. The mortgage securing this note was on "ninety-three head of cattle, described as follows: All two and three year old steers, branded — on right hip." The third note was for $2,832.62, dated October 13, 1902, due April 23, 1903, and the mortgage securing this note was on "one hundred eleven head of cattle of the following description: All long two year old steers, branded — on right hip." The fourth note was for $4,681.35 dated October 30, 1902, due May 8, 1903, and the mortgage securing it

was on "one hundred sixty-two head of cattle, to wit: 85 steers, four years old, branded 2 or H, ave. 1175  ; 11 steers, two years old, branded — on right hip; 8 steers, one year old, branded — on right hip; 19 cows, five to six years old, branded Dd or H; 27 heifers two years old, branded — on right hip; 12 calves of 1902 (six steers, six heifers)." Each of the mortgages contained the following: "The above described stock are in my undisputed possession, free from all liens and incumbrances, and are kept on my premises on section No. 4, township No. 5, range No. 38, in Chase county, Nebraska." The mortgages were all duly filed in the office of the county clerk of Chase county on or about the date of their execution. The first two notes, together with the mortgages given to secure their payment, were assigned before maturity, for a valuable consideration, to the South Omaha National Bank, and it appears that there was due and unpaid upon them at the commencement of this action the sum of more than $6,000. The two notes and mortgages last above described were sold and assigned to the Commercial National Bank of Fremont, for value, before maturity, and the evidence shows that neither of them had been paid when this action was commenced. All of the notes were indorsed or guaranteed by the Shelley-Rogers company, which became insolvent or failed and went out of business in the spring of 1903. After such failure the agent of the Commercial National Bank of Fremont went to McClelland's ranch and took possession, with his consent, of 134 head of cattle, there found, under and by virtue of its mortgages. Among the cattle so taken were 99 head, which in some measure answered the description contained in the two mortgages first above described. The South Omaha National Bank thereupon demanded possession of the cattle, which it claimed were described in its said mortgages, and, being refused such possession, instituted a suit in replevin against the Commercial National Bank of Fremont, Harry McClelland and Harry E. McGillin, in whose possession the cattle were found. The two last named persons disclaimed any inter-

est in the property, and the suit proceeded between the two mortgagees. On issues properly joined a trial was had to a jury, which resulted in a verdict in favor of the defendant. There was a judgment on the verdict, and the plaintiff brings the case to this court by petition in error.

There was nothing which appeared upon the face of the mortgages which would render any of them invalid. The defendant, however, on the trial below claimed that the mortgages held by the plaintiff were void for uncertainty of description, and attempted to show that at the time they were executed there was a greater number of cattle on McClelland's ranch, bearing the brands and corresponding to the ages of the cattle described in the plaintiff's mortgages, than were covered by those instruments. In other words, that each of the mortgages covered but a part of a herd of cattle bearing the particular brands and corresponding to the ages of the cattle described therein. And it may be stated that, had the testimony clearly established such fact, then as to third persons the mortgages would have been void for uncertainty of description. An examination of the record shows that McClelland, by his testimony, attempted to aid the defendant in rendering the plaintiff's mortgages void, but in our minds it is doubtful if his evidence was sufficient to accomplish that purpose. He testified that he was doing a large business, and had from 500 to 600 cattle on his ranch most of the time; that he was constantly buying and selling. But, when asked if he had more than 81 head of four year old steers, branded "—" or "H," on his ranch at the time he executed the first mortgage, he was unable to say positively that he had any more than that number. The same may be said as to his evidence in regard to the 93 head of three year old steers, branded "—" on right hip, as described in the plaintiff's second mortgage. We do not deem it advisable, however, to state our view of the weight of this evidence, for the reason that the case may be tried again, and the question thus raised is one that should be submitted to, and left for, the determination of the jury under proper instructions.

If, when McClelland executed plaintiff's mortgages, he had no more cattle on his ranch of the age, kinds and brands set forth and described therein, then the mortgages were not void for uncertainty, and the plaintiff has a prior lien on so many of the cattle in controversy as were covered by said mortgages. *Peters v. Parsons,* 18 Neb. 191; *Wiley v. Shars,* 21 Neb. 712. If, on the other hand, McClelland had in his possession and on his ranch a greater number of cattle of the same brand, kind and description as those described in the plaintiff's mortgages at the time of their execution, or, in other words, if the mortgages described only a part of his herd of cattle of the same kind, brands and ages, quite another question is presented. We are satisfied from an examination of the authorities that a mortgage of the kind above described is void for uncertainty of description as to third persons, but is not void between the parties thereto. While it is not a completed instrument, in that the lien of the mortgage is not fixed and established, yet it gives to the mortgagee, or his assignee, the right of selection, and, whenever he has exercised that right and made such selection, a valid mortgage lien is thereupon created by virtue of such instrument and the selection made thereunder.

It will be borne in mind that all of the mortgages were given to the Shelley-Rogers Company. After the assignment of the mortgages to the plaintiff, the mortgages which were assigned to defendants were taken. If the mortgagor had as many cattle of the same kind, brands and ages as were described in both mortgages, then the mortgagees would have equal rights of selection. If after the mortgagee had obtained a right of selection under his first mortgage, and had assigned that right to the plaintiff, he took another mortgage which gave him a further right of selection from the same descriptions of cattle, this right would be subject to the right of selection which he had assigned in the first mortgage, and he could transfer to the second assignee no greater right than he himself possessed. In such case, the assignee of the second mortgage would

acquire the right only to select the number of cattle of the common description in excess of the number which the assignee of the first mortgage would be entitled to select thereunder. If both have equal rights of selection, the one who first exercises his right of selection will obtain a priority of lien on the property described in common in the two mortgages. *Brittain D. G. Co. v. Blanchard, Shelley & Rogers Co.*, 60 Kan. 263, 56 Pac. 474; *Avery v. Popper & Bro.*, 92 Tex. 337, 48 S. W. 572.

It appears from the evidence, without dispute, that the officer in executing the order of replevin herein found and took from the possession of defendants 11 or 12 five year old steers. None of these were, or could be, in the nature of things, covered by either of the defendant's mortgages. The officer also found and took possession of 34 head of four year old steers. Now, if these steers were branded only with a bar on the right hip, the jury might have found from the evidence that they were animals covered by the plaintiff's second mortgage. It is clear from reading the descriptions contained in the defendant's mortgages that none of these animals could be covered thereby. So that, even if the defendant had obtained a priority by reason of first exercising its right of selection, yet such right did not extend to the selection of cattle not embraced, described in, and intended to be covered by its mortgages. So it would seem from the evidence taken at the trial that, as to at least 11 head of five year old steers and 34 head of four year old steers, the plaintiff may have been entitled to recover. With the evidence in this condition, the court instructed the jury, in substance, that the description of the cattle in plaintiff's chattel mortgages should be such as to enable third parties to identify them, aided by such inquiry as each mortgage indicated; and that, if McClelland owned and had in his possession on the premises described in said mortgages a large number of steers of a very similar description as those described and enumerated in either of the plaintiffs mortgages, then they should find for the defendant. It seems clear that this instruction

was not warranted by the evidence. The court also gave other instructions which are inconsistent with the rules above announced and constitute reversible error.

For the foregoing reasons, the judgment of the district court is reversed and the cause is remanded for further proceedings according to law.

REVERSED.